IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DAVID EUGENE SAMMONS,

        Plaintiff,

v.                                                                           CIVIL ACTION NO. 3:21-0081

WAYNE COUNTY COMMISSION,
WAYNE COUNTY SHERIFF, RICHARD THOMPSON,
individually,
DEPUTY HARRY SOWARDS, individually,
HOWARD MEDDINGS, individually,
WAYNE COUNT BOARD OF EDUCATION, and
TODD ALEXANDER, individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Todd Alexander and Defendant Wayne County Board of Education's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 20. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

**I. BACKGROUND**

Plaintiff David Eugene Sammons was an employee of the Wayne County Board of Education ("WCBOE"). According to the Complaint, Plaintiff worked for the WCBOE for forty years, most recently as Transportation Director. Compl. ¶ 14, ECF No. 1. He resigned in 2019.

Prior to his retirement, Plaintiff had multiple issues with his coworker, Defendant Howard Meddings: Mr. Meddings often broke work rules, encouraged his colleagues to write grievances against other supervisors, attempted to physically confront Plaintiff, and mocked Plaintiff. As his supervisor, Plaintiff gave Mr. Meddings a poor performance review and reported his misconduct

to Defendant Todd Alexander, the superintendent of the WCBOE and Plaintiff's supervisor. However, on every occasion that Plaintiff reported the misconduct, Mr. Alexander refused to take disciplinary action or dismissed the grievances. Both the WCBOE and Mr. Alexander allegedly had a practice or pattern of ignoring legitimate concerns and complaints against Mr. Meddings. This allowed Meddings to continue using his position as a supervisor to abuse his powers and threaten other employees. Plaintiff resigned on September 30, 2019.

After Plaintiff's resignation, an alleged break-in occurred at the WCBOE's parts room, which Mr. Meddings managed and oversaw as inventory supervisor. As a result, all named defendants participated in the investigation of the alleged break-in over the next few months. The WCBOE contacted the Wayne County Sherriff's Office about the break-in, and Defendant Deputy Sowards took the lead on the investigation. Mr. Meddings and Deputy Sowards were friends, and Deputy Sowards failed to properly include Mr. Meddings as a suspect throughout the investigation. Defendants also never had an inventory list or any evidence that any items were missing after or taken during the break-in.

As part of the investigation, Mr. Alexander asked Plaintiff to come to the WCBOE office for questioning. Mr. Alexander did not tell Plaintiff that he was under suspicion of wrongdoing or that Deputy Sowards would be present. On October 24, 2019, Plaintiff met with Defendants Alexander and Sowards and was questioned about items placed on buses before they were auctioned off. Plaintiff confirmed he would place a few obsolete parts on the buses to be auctioned off. Plaintiff also confirmed that the items they presented to him in photographs during the meeting appeared to be purchased legally through auctions. However, Deputy Sowards changed Plaintiff's statements to obtain probable cause for a warrant against another WCBOE employee, Mr. Reeves,

claiming that the items Mr. Reeves had lawfully purchased were stolen. Deputy Sowards spoke to Mr. Meddings and then obtained a search warrant for Mr. Reeves's property.

Mr. Meddings told Deputy Sowards that Plaintiff was aware that Mr. Reeves was stealing from the WCBOE. Defendant Meddings testified under oath that he reported the theft of items from the WCBOE to Plaintiff, who acknowledged it and ignored it. Defendant Sowards also shared texts between Mr. Reeves and Plaintiff as evidence of a conspiracy that Plaintiff had knowledge of Mr. Reeves's theft. Actually, Defendant Meddings never reported any stolen items to Plaintiff; no employee had. Mr. Meddings was the sole source of information alleging that Plaintiff was aware of the theft. Mr. Meddings then conspired with other employees to support his statements against Plaintiff. Plaintiff then learned that his name had appeared in the local newspaper as an individual who had recently been charged with a crime. The crime occurred in October 2019, one month after Plaintiff retired. The information in the newspaper article, which was republished in other local papers, was false, as was the criminal investigation.

Plaintiff contacted the Wayne County Sherriff's Department and appeared in court, where he was charged with Obstruction of Justice under W. Va. Code Ann. § 61-5-17. The prosecuting attorney moved to dismiss the charge for lack of probable cause, which the magistrate approved. Plaintiff then filed this action. Defendant WCBOE and Defendant Alexander are named in the following counts: (1) Civil Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983 (Count III); (2) Defamation (Count VII); (3) Respondeat Superior/Negligent Hiring, Supervision, and Retention (Count VIII); and (4) Intentional Infliction of Emotional Distress (Count IX).

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts

contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

**A. Count III: Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983**

To state a claim for civil conspiracy under Section 1983, plaintiffs have the "weighty burden" of showing that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *Barrett v. Pae Gov't Servs.*,

*Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). Plaintiff's "evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. The well-pleaded factual allegations "must plausibly suggest *agreement*, rather than merely being *consistent* with agreement." *Barrett*, 975 F.3d. at 435 (quoting *Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

Defendants WCBOE and Alexander submit that Plaintiff has failed to indicate at least one defendant other than Mr. Alexander, Mr. Meddings, or the WCBOE, and so his claims are barred by the "intracorporate conspiracy doctrine." Defs.' Mem. 8, ECF No. 21. Further, they assert that Plaintiff failed to allege any facts showing that either defendant "participated in [Plaintiff's] arrest, detention, or prosecution." *Id.* Finally, they contend that there are no sufficient allegations of communications between the defendants, because the one single exchange between two defendants and Plaintiff (the October meeting between Mr. Alexander, Deputy Sowards, and Plaintiff) is insufficient to allege the existence of an unlawful conspiracy as a matter of law. *Id.* Plaintiff responds that he has sufficiently alleged that the Defendants participated in the conspiracy by ignoring Plaintiff's reports about Mr. Meddings's inappropriate workplace behavior. Pl.'s Resp. 9, ECF No. 26. Further, the meeting led to Deputy Sowards's misrepresentation of Plaintiff's statements, which ultimately led to the criminal charge against him. *Id.*

First, the intracorporate conspiracy doctrine, which recognizes that a corporation cannot conspire with its agents because the "agents' acts are the corporation's own," is inapplicable here, because the alleged conspiracy includes defendants outside of the corporation – like Defendants Sowards or Thompson. *Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 352 (4th Cir. 2013). However, the only factual basis for the conspiracy as to these defendants is that Mr. Alexander

ignored Plaintiff's reports and that Mr. Alexander and Deputy Sowards met and spoke with Plaintiff on a single occasion during an investigation of the alleged break-in. *See* Pl.'s Resp. 9. This is insufficient to state a claim for conspiracy. While the alleged facts may create a plausible inference that Plaintiff's Fourth Amendment rights were violated, they fail to credibly suggest either Mr. Alexander or the WCBOE shared a common objective with Deputy Sowards to effect Plaintiff's arrest or pursue criminal charges against him. Mr. Alexander may have been present at Plaintiff's questioning, but there is nothing in the facts to suggest that his intended goal was also to pursue a false prosecution of Plaintiff for obstruction of justice rather than to investigate the break-in at the parts room. *See Davis v. Wal-Mart Stores E., L.P.*, 177 F. Supp. 3d 943, 957 (E.D. Va. 2016) (*affirmed in part, vacated in part sub nom.* by 687 F. App'x 307 (4th Cir. 2017)) (finding insufficient allegations of a conspiracy when there was no proof that defendants sheriff and local pharmacist shared the same objective to place plaintiff under arrest).

These alleged facts do not show that Mr. Alexander and the WCBOE shared the same objective as the other defendants; nor do they raise any suggestion to why Defendants would enter into an agreement with law enforcement to intentionally violate Plaintiff's constitutional rights. *See Barrett v. Pae Govt. Servs., Inc.*, 975 F.3d 416, 435 (4th Cir. 2020) (finding plaintiff's complaint failed when it set forth no factual allegations to explain why police officers would enter into an agreement with the defendants because there was no allegation of preexisting relationship, knowledge, or agreement).

Unlike in *Reeves*, Plaintiff did not work for the Defendants at the time of questioning, and it is unclear what motive they would have in pursuing a claim against him, particularly considering that Defendants could not take any sort of disciplinary action against him. *See* Order on Motion to Dismiss, *Reeves v. Wayne Cnty. Bd. of Educ.*, No. 20-CV-423 (S.D.W. Va. Dec. 11, 2020), ECF

No. 57. Further, unlike in *Reeves*, Plaintiff did not speak to Mr. Alexander about his innocence, and there are no allegations then that Mr. Alexander should have known that Deputy Sowards would misrepresent his statements to pursue claims against Plaintiff. *Id*. There are no allegations of agreements or communications that were made between the alleged conspirators here, which does not support a meeting of the minds to falsely prosecute Plaintiff. *See Soc'y Without a Name.*, 655 F.3d at 347. Even viewed in the light most favorable to Plaintiff, the allegation is at best, merely consistent with an agreement but does not plausibly suggest agreement as the law requires and must be dismissed. *Id*. at 346. Accordingly, this charge is dismissed as to both Defendants.

**B. Count VII: Defamation**

In West Virginia, a claim for defamation requires a plaintiff to plead and prove the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiffs; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley News*, 320 S.E.2d 70, 77 (W. Va. 1983). A communication or statement is "defamatory" "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (Am. L. Inst. 1977); *Crump*, 320 S.E.2d at 77. Importantly, "[d]irect defamatory statements are not an absolute prerequisite to recovery, however, because defamation may also be accomplished through inference, implication, innuendo or insinuation." *Crump*, 320 S.E.2d at 77.

*i. Failure to State a Claim*

Defendants argue that the Complaint does not allege a "single statement made" or defamatory action taken by Mr. Alexander or the WCBOE. Defs.' Mem. 10. Further, they allege, the Complaint is devoid of any well-pleaded factual allegations regarding the contents of the

statements, to whom they were communicated, when and in what form the statements were communicated, why the recipients were not privileged to receive them, why the statements were false, how they were published, or how they harmed Plaintiff. *Id*. The Defendants also note that because separate defendants must be treated separately, the Complaint must go beyond naked assertions of collective liability to allege the personal involvement of any defendant. *See Galicki v. N.J.*, 2015 WL 3970297 (D.N.J. June 29, 2015). Plaintiff responds that the Court's decision in *Reeves* involved near identical language and when taken with the incorporated facts, stated a plausible claim that Defendants communicated false statements to the Wayne County community that Plaintiff had engaged in crimes. Pl.'s Resp. 11-12.

> Here, the Complaint states:
>
> **Defendants Meddings' and Sowards'** unnecessary and unwarranted actions and statements that Mr. Sammons participated and approved theft from WCBOE qualify as representations to the community and/or other third parties that convey both a false and defamatory suggestion that Plaintiff had engaged in misconduct during their employment and/or committed illegal acts -- all of which are false in violation of the common law and public policies of the state of West Virginia.

Compl. ¶ 96 (emphasis added). Unlike in *Reeves*, where this Court dealt with a claim that Mr. Alexander and WCBOE specifically suspended and terminated the plaintiffs' employment and then communicated the specifics of those events publicly, which could possibly qualify as representations to the community about their misconduct, here, there is no inference that Mr. Alexander or the WCBOE itself "communicated" Plaintiff's crime to the community through any sort of public employment action. It is undisputed that the WCBOE and Mr. Alexander could not have taken any kind of employment action against Plaintiff, who was retired at the time. However, the Complaint, when read in the light most favorable to Plaintiff, alleges that the WCBOE and Mr. Alexander knowingly and falsely communicated this information to the local newspapers. Compl.

¶ 48. This allegation, at this stage, could support a claim of defamation.

    *ii. Immunity*

Defendants' Reply notes that even if a defamation claim were stated, the WCBOE is immune from Plaintiff's defamation claim. Defs.' Reply 9-10, ECF No. 28. Under the West Virginia Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), a "political subdivision," such as the WCBOE, is immune from the intentional conduct of its employees and its own intentional misconduct. W. Va. Code § 29-12A-4(b)(1). West Virginia courts appear to consider defamation an intentional tort, even though a defendant may have acted only negligently in failing to ascertain whether his statements were false or defamatory. *See Boggs v. Camden-Clark Mem. Hosp. Corp.,* 609 S.E.2d 917, 924 (W. Va. 2004) (noting that the protection of the Medical Professional Liability Act did not extend to intentional torts such as defamation). As such, the WCBOE is necessarily immune from this claim, and must be dismissed as to it.

## C. Count VIII: Respondeat Superior/Negligent Hiring, Supervision, and/or Retention

    *i. Immunity*

Defendants allege that both the WCBOE and Mr. Alexander are statutorily immune for respondeat superior claims because the underlying claims regarding Mr. Meddings's behavior are based on intentional acts, and that Plaintiff has failed to state a claim under the negligence theories of recovery. *See* Defs.' Mem. 12-16. Plaintiff responds that he has alleged sufficient facts to overcome qualified immunity. Pl.'s Resp. 13-14. This is not responsive to the issue that the Court is examining, because whether the WCBOE is immune for the state law claims in question involves the scope of statutory immunity conferred by the Tort Claims Act.

Insofar as the underlying theory of respondeat superior attempts to hold the WCBOE and Defendant Alexander liable for the intentional torts of Mr. Meddings, such claims fail as a matter

of law because of statutory immunity. *See* W. Va. Code Ann. § 29-12A-4(b)(1). Similarly, Mr. Alexander is immune from liability unless one of the following applies: (1) his or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code. Syl. Pt. 1, *Beckley v. Crabtree*, 428 S.E.2d 317 (1993) (quoting W.Va. Code § 29-12A-5(b)) None of the three exceptions are alleged to exist here. The Complaint alleges that Defendant Alexander performed the actions with permission or under the authority of the WCBOE. Compl. ¶ 11. Further, it asserts that he was negligent in several aspects, not that he committed any intentional behavior.[1] Compl. ¶ 18. Nor is there a West Virginia statute that expressly imposes liability on Mr. Alexander. As such, this Count as to Mr. Alexander must be dismissed.

However, the WCBOE is not automatically immune from all acts of negligence on the part of its employees. *See id.* at § 29-12A-4(c)(2). While the Act provides some immunity from negligence, its provisions "do not automatically preclude [] recovery." *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 773 (W. Va. 2021); *see also Woods v. Town of Danville, W.V.*, 712 F.Supp.2d 502, 514 (noting that "[t]he statute simply does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee."). Accordingly, this Court must also examine the allegations of negligent hiring, supervision, and retention as to Defendant WCBOE. Defendants contend that Plaintiff has not explained his injury or tied the Defendants' negligent acts to that injury. Defs.' Mem. 16. However, Plaintiff has clearly stated that he suffered a constitutional injury when he was wrongfully seized because of criminal proceedings that arose,

---

[1] Or at least, no intentional behavior beyond the conspiracy claim, which has been dismissed against him.

at least in part, from Defendants' failure to properly supervise or remove Defendant Meddings or prevent his false accusations. Compl. ¶¶ 18-22, 43-47.

*ii. Failure to state a claim*

a. Negligent Hiring

To state a claim for negligent hiring, a claim must allege facts regarding the Board's initial decision to hire Mr. Meddings or any irregularities attendant to his hiring. *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 773 (W. Va. 2021). Here, Plaintiff has alleged that the Defendant failed to properly evaluate and screen Defendant Meddings before hiring. Compl. ¶ 107. This conclusory statement would normally be insufficient to state a claim but given that Plaintiff has adequately pled a negligent retention claim, the Court will allow both claims to go forward.[2]

b. Negligent Retention

"To hold an employer liable for negligent retention, the employer must have been able to foresee 'the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee.'" *C.C.*, 859 S.E.2d at 776 (quoting *McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (1998) (per curiam)). "Thus, the relevant inquiry in a negligent retention analysis is, 'Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?'" *Id.* Liability for negligent retention may be imposed when an injury

---

[2] In *C.C.,* the West Virginia Supreme Court of Appeals clarified that the causes of action for negligent hiring, negligent retention, and negligent supervision constitute three separate causes of action with their own distinct elements. However, *C.C.* was decided after Plaintiff filed his claims, and the previous pleading standard included negligent hiring and retention as one claim. *McCormick v. W.Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (1998) (per curiam). Given that Plaintiff has adequately pled a negligent retention claim, the Court will allow the claim as a whole to go forward.

occurred because of an employer's retention of an "unfit employee" and such risk of injury was reasonably foreseeable to the employer. *Id.*

Here, the Complaint alleges that Defendant Alexander (and through him the WCBOE) was repeatedly notified about Mr. Meddings' misconduct, violence, and animus towards other staff members. Compl. ¶¶ 19-22. Further, it alleges that Meddings's behavior led to the false accusations of the Reeves, the investigation of whom led to Plaintiff's obstruction charge. *Id*. ¶¶ 26-30, 41, 42. The Board therefore could have foreseen the possibility of other confrontations, even though "the exact nature of such future encounters may have been unknowable." *C.C.*, 859 S.E.2d at 776. In fact, in allowing Mr. Meddings to continue his behavior and be involved in the investigation regarding a break-in at WCBOE facilities, Defendants could have foreseen that injury would arise to Plaintiff and others falsely accused. At this stage, Plaintiff has sufficiently stated a claim against the WCBOE.

c. Negligent Supervision

"A negligent supervision claim prevails when the party shows that the employer failed to supervise its employee, and as a result, the employee committed a negligent act and caused injury." *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (2000). "West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence." *Carroll v. USAA Sav. Bank*, CV 3:16-11120, 2017 WL 811491, at *3 (S.D.W. Va. Mar. 1, 2017). All the conduct attributable to Mr. Meddings (civil conspiracy to deprive Plaintiff of his rights under 42 U.S.C. § 1983, intentional infliction of emotional distress, and defamation) is intentional, and so there is no required underlying claim of negligence. However, insofar as the Complaint has alleged that Mr. Alexander acted negligently in his supervision of Mr. Meddings when he failed to remove him despite complaints and concerns, this

underlying negligence can be grounds to hold the WCBOE liable, and so the claim can go forward. *See* Compl. ¶¶ 107, 109-110

**D. Count IX: Intentional Infliction of Emotional Distress**

The Supreme Court of Appeals of West Virginia has stated that the tort of intentional infliction of emotional distress ("IIED") "permits the recovery of damages for emotional distress arising out of extreme and outrageous conduct intentionally or recklessly caused by the defendant." *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 704 (W. Va. 1982). To recover, West Virginia requires plaintiffs to prevail on four elements:

> it must be shown (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe the no reasonable person could be expected to endure it.

*Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020).

In their Motion, Defendants state that the Complaint "does not allege a single act or omission by [the Defendants] that could possibly be characterized as 'outrageous.'" Defs.' Mem. 18. The Complaint alleges that Plaintiff's emotional distress resulted from Defendants' "[taking] actions against Mr. Sammons including, but not limited to, falsely accusing him of a crimes [sic] and/or arresting, searching, and/or seizing his person, and targeting him for prosecution for crimes that they obviously knew he did not commit." Compl. ¶ 115. The only specific allegation that could link specific actions by Mr. Alexander or the WCBOE leading to Plaintiff's false accusation, arrest or search and seizure, or prosecution is that Defendants repeatedly refused to prevent Mr. Meddings from abusing his power and "threaten[ing] any employee that stood in the way of his ambitions." *Id.* ¶¶ 22. However, the only specific incident involving Plaintiff and Mr. Meddings,

wherein Mr. Meddings attempted to physically confront Plaintiff, was dealt through a grievance procedure, suggesting that Defendants were responsive to Meddings's actions against Plaintiff. *See* Compl. ¶¶ 20-21. While, of course, an employer may be liable for failure to remedy tortious conduct, taken in context, the allegations here, of ignoring workplace grievances and failing to discipline an employee for breaking workplace rules, do not constitute outrageous behavior that would "truly offend community notions of acceptable conduct." *Travis v. Alcon Labs*, 504 S.E.2d 419, 425 (W. Va. 1998). Further, this failure to discipline has not been adequately linked to the cause of Plaintiff's distress.

Additionally, for the same reasons that the WCBOE is statutorily immune from a defamation claim, the claim against it for intentional infliction of emotional distress, another intentional tort, must be dismissed. *See, e.g. Malicki v. City of Parkersburg*, No. 19-CV-00520, 2020 WL 4929025, at *8 (S.D.W. Va. June 29, 2020), *report and recommendation adopted*, No. 2:19-CV-00520, 2020 WL 4928998 (S.D.W. Va. Aug. 21, 2020).

## IV. CONCLUSION

For the foregoing reasons, as to Defendant WCBOE, the Court **GRANTS** the Motion to Dismiss as to Counts III, VII, and IX and **DENIES** the Motion as to Count VIII. As to Defendant Alexander, the Court **GRANTS** the Motion as to Counts III, VIII, and IX and **DENIES** the Motion as to Count VII.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 19, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE