IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DAVID EUGENE SAMMONS,

        Plaintiff,

v.                                CIVIL ACTION NO. 3:21-0081

WAYNE COUNTY COMMISSION,
WAYNE COUNTY SHERIFF, RICHARD THOMPSON,
individually,
DEPUTY HARRY SOWARDS, individually,
HOWARD MEDDINGS, individually,
WAYNE COUNT BOARD OF EDUCATION, and
TODD ALEXANDER, individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Wayne County Commission, Wayne County Sherriff Richard Thompson, and Deputy Harry Sowards' Motion to Dismiss. ECF No. 22. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

**I. BACKGROUND**

Plaintiff David Eugene Sammons was an employee of the Wayne County Board of Education ("WCBOE"). According to the Complaint, Plaintiff worked for the WCBOE for forty years, most recently as Transportation Director. Compl. ¶ 14, ECF No. 1. He resigned in 2019.

Prior to his retirement, Plaintiff had multiple issues with his coworker, Defendant Howard Meddings: Mr. Meddings often broke work rules, encouraged his colleagues to write grievances against other supervisors, and attempted to physically confront Plaintiff. As his supervisor,

Plaintiff gave Mr. Meddings a poor performance review and reported his misconduct to Defendant Todd Alexander, the superintendent of the WCBOE and Plaintiff's supervisor. However, on every occasion that Plaintiff reported the misconduct, Mr. Alexander refused to take disciplinary action or dismissed the grievances. Both the WCBOE and Mr. Alexander allegedly had a practice or pattern of ignoring legitimate concerns and complaints against Mr. Meddings. This allowed Meddings to continue using his position as a supervisor to abuse his powers and threaten other employees. Plaintiff resigned on September 30, 2019.

After Plaintiff's resignation, an alleged break-in occurred at the WCBOE's parts room, which Mr. Meddings managed and oversaw as inventory supervisor. As a result, all named defendants participated in the investigation of the alleged break-in over the next few months. The WCBOE contacted the Wayne County Sherriff's Office about the break-in, and Defendant Deputy Sowards took the lead on the investigation. Mr. Meddings and Deputy Sowards were friends, and Deputy Sowards failed to properly include Mr. Meddings as a suspect throughout the investigation. Defendants also never had an inventory list or any evidence that any items were missing after or taken during the break-in.

As part of the investigation, Mr. Alexander asked Plaintiff to come to the WCBOE office for questioning. Mr. Alexander did not tell Plaintiff that he was under suspicion of wrongdoing or that Deputy Sowards would be present. On October 24, 2019, Plaintiff met with Defendants Alexander and Sowards and was questioned about items placed on buses before they were auctioned off. Plaintiff confirmed he would place a few obsolete parts on the buses to be auctioned off. Plaintiff also confirmed to Defendants Sowards and Alexander that the items they presented to him in photographs during the meeting appeared to be purchased legally through auctions. Deputy Sowards changed Plaintiff's statements to obtain probable cause for a warrant against

another WCBOE employee, Mr. Reeves, claiming that the items Mr. Reeves had lawfully purchased were stolen. Deputy Sowards spoke to Mr. Meddings and then obtained a search warrant for Mr. Reeves's property.

Mr. Meddings told Deputy Sowards that Plaintiff was aware that Mr. Reeves was stealing from the WCBOE. Defendant Meddings testified under oath that he reported the theft of items from the WCBOE to Plaintiff, who acknowledged it and ignored it. Defendant Sowards also shared texts between Mr. Reeves and Plaintiff as evidence of a conspiracy that Plaintiff had knowledge of Mr. Reeves's theft. Actually, Defendant Meddings never reported any stolen items to Plaintiff; no employee had. Mr. Meddings was the sole source of information alleging that Plaintiff was aware of the theft. Mr. Meddings then conspired with other employees to support his statements against Plaintiff. Plaintiff then learned that his name had appeared in the local newspaper as an individual who had recently been charged with a crime occurring in October 2019, one month after Plaintiff retired. The information in the newspaper article, which was republished in other local papers, was false, as was the criminal investigation.

Plaintiff contacted the Wayne County Sherriff's Department and appeared in court where he was charged with Obstruction of Justice under W.Va. Code § 61-5-17. The Prosecuting Attorney moved to dismiss the charge for lack of probable cause, which the Magistrate approved. Plaintiff then filed this action. Defendants WCC, Sherriff Thompson, and Deputy Sowards are named in the following counts: Count I: Violation of Civil Rights (Defendant Sowards); Count II: Violation of Civil Rights (Defendant Wayne County Commission); Count III: Civil Conspiracy to Violate Civil Rights; Count IV: Abuse of Process; Count V: Malicious Prosecution; Count VII[1]:Defamation; Count VIII: Respondeat Superior/Negligent Hiring, Supervision and Retention

---

[1] The Court notes that the Counts are mislabeled and there is no Count VI.

(Wayne County Commission and Thompson); Count IX: Intentional Infliction of Emotional Distress.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

A. Count I: Violation of Civil Rights Under 42 U.S.C. § 1983 (Deputy Sowards)

Plaintiff's Complaint alleges that Defendant Sowards' "acts in investigating and causing a criminal complaint to issue for the arrest of Mr. Sammons lacked probable cause and/or reasonable suspicion and violated Plaintiff's well-established First Amendment, Fourth Amendment and Fourteenth Amendment rights…." Compl. ¶ 53. Defendants argue that this claim should be dismissed because they are entitled to qualified immunity as there was no law that would have placed Deputy Sowards on notice that issuing a criminal complaint after conducting a criminal investigation would constitute a deprivation of Plaintiff's rights. Defs.' Mem. 4-5, ECF No. 23.

"One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued" are considered a § 1983 malicious prosecution claim. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996). A § 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams,* 223 F.3d 257, 261 (4th Cir. 2000)). To succeed, a plaintiff must show that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor." *Id*.

Obviously, probable cause for arrests exists where there is a valid warrant or indictment. However, here, Plaintiff has alleged, multiple times, that the warrant was invalid because Deputy Sowards lied in obtaining it. *See* Compl. ¶¶ 36, 38, 55. As alleged, the Complaint adequately states a constitutional violation of Plaintiff's Fourth Amendment rights. *See Humbert v. Mayor and City Council of Baltimore*, 866 F.3d 546, 559 (4th Cir. 2017) ("[A]n officer who intentionally or recklessly puts lies before a magistrate or hides facts from him violates the Constitution unless the untainted facts themselves provide probable cause."); *Evans v. Chalmers,* 703 F.3d 636, 648 (4th Cir. 2012) ("[P]olice officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances. In particular, officers may be liable when they have lied to or misled the prosecutor."). Accordingly, Plaintiff has sufficiently stated a claim on this Count.

Defendant Sowards also argues that he is entitled to qualified immunity. Under qualified immunity, government officials performing discretionary functions are generally shielded from liability for civil damage if their behavior does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two-step determination of "(1) whether the official violated a constitutional right; and if so (2) whether the right was 'clearly established' at the time of its violation." *Rock for Fife–UMBC v. Hrabowski*, 411 F. App'x. 541, 547 (4th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). However, as discussed above, Plaintiff's Complaint alleges that Deputy Sowards violated a constitutional right, and the law was clearly established at the time. *See Humbert*, 866 F.3d at 561-62 (4th Cir. 2017). As such, Defendant is not entitled to qualified immunity on this Count at this stage of the proceedings.

As to the First and Fourteenth Amendment claims, the Court finds there are no grounds stated to allege a First Amendment violation; no discernible First Amendment right is implicated within Plaintiff's assertion of the right to be "secure in his person, free from unreasonable detention, search, and seizure, and to bodily security and privacy." Compl. ¶ 9. Insofar as the Fourteenth Amendment applies the Fourth Amendment rights to state actors, Plaintiff has stated a viable Fourteenth Amendment claim. *See e.g. Mapp v. Ohio*, 367 U.S. 643 (1961).

B. Count II: Violation of Civil Rights Under 42 U.S.C. § 1983 (Defendant Wayne County Commission)

Defendants claim that the Complaint does not make any factual allegations that the WCC had a written policy, ordinance, or any kind of decision regarding any alleged deprivation or act complained of regarding its officers, and no acts alleged which would support a claim of practice or custom. Defs.' Mem. 9. Plaintiff's response notes that the Complaint alleges that "[WCC] had a custom/practice of encouraging its officers, including Defendant Sowards of pursuing false charges lacking probable cause and then disseminating them to news outlets." Pl.'s Resp. 12, ECF No. 27.

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id*. at 694. Rather, plaintiffs must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). To maintain liability based on municipality policy or custom, the plaintiff must identify "persistent and widespread practice of municipal officials, the duration and frequency of which

indicate that the policymakers (1) had actual or constructive knowledge of the conduct and (2) failed to correct it due to their deliberate indifference. *Owens v. Baltimore Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014).

Here, the only allegation is that the WCC "ha[s] a custom and/or practice that has resulted in violation of Plaintiff's rights… or were deliberately indifferent." Compl. ¶ 63. However, there are no allegations as to the actions of any WCC employee besides Deputy Sowards that support a finding of a policy or custom of similar violations. There is not even one other alleged incident regarding the acts of another officer beyond conclusory allegations. *See Owens,* 767 F.3d at 403 (finding sufficient an allegation of "'reported and unreported cases from the period of time before and during the events complained of'").

This allegation, unlike the one in *Owens*, does not allege separate instances that may buttress Plaintiff's legal conclusion. *Cf. Daniels v. Wayne Cnty.*, No. 3:19-0413, 2020 WL 2543298, at *5 (S.D.W. Va. May 19, 2020) (finding plaintiff's allegations sufficient where Plaintiff "has done more than simply point to traffic stops; rather, he has described a targeted set of stops *in conjunction with* an unconstitutional search of his vehicle, a strip search of his person, and an hours-long detention."). *See also Daniels v. City of South Charleston*, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021) (finding that the court was constrained by *Owens* to conclude that the plaintiff's complaint stated sufficient factual detail to support his allegations when he claimed that unconstitutional excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past five years.") (internal citations omitted); *Quigley v. City of Huntington*, No. 3:17-CV-01906, 2017 WL 9533233, at *9 (S.D.W. Va. Sept. 22, 2017) (finding sufficient allegations to withstand a motion to dismiss where Plaintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed

against the Huntington Police Department suggested the City's knowledge and indifference.") *report and recommendation adopted sub nom by* 2017 WL 4998647 (S.D.W. Va. Nov. 2, 2017) ; *Lane v. Fayette Cnty. Comm'n*, No. 2:18-CV-01223, 2019 WL 4780815, at *3 (S.D.W. Va. Sept. 30, 2019) (granting a motion to dismiss where plaintiff did not allege "any instances of such misconduct other than the instant case."). There are no facts in the Complaint to infer that the WCC was deliberately indifferent to Plaintiff's rights beyond the threadbare elements of a legal claim. Accordingly, this Count must be dismissed against the WCC.

C. Count III: Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983 (All Defendants)

Defendants contend that Plaintiff mistakenly pled his claim under § 1983, and that the conspiracy complaint should be governed by 42 U.S.C. § 1985(3), which would fail if Plaintiff did not allege a conspiracy motivated by racial or other class-based discriminatory animus. Defs.' Mem. 12-13. However, a claim of conspiracy can lie under 42 U.S.C. § 1983. *See Hafner v. Brown*, 983 F.2d 570, 576-77 (4th Cir. 1992). To state a claim for civil conspiracy under Section 1983, plaintiffs have the "weighty burden" of showing that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996); *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). Plaintiff's "evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 422. Additionally, "courts have ... required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969-70 (4th Cir.1992) (citations omitted).

The allegations against Deputy Sowards suggest that he acted in concert with some other

defendants, by lying and pursuing a false accusation against Plaintiff and his coworkers. He was allegedly friends with Mr. Meddings and failed to investigate him properly. Compl. ¶¶ 27, 30. For example, he misused texts from Plaintiff and showed them to WCBOE employees, including Mr. Meddings, to prove Plaintiff's knowledge of theft. *Id*. ¶ 42. He also intentionally relied on Mr. Meddings's false information to pursue a charge against Plaintiff. *Id*. ¶¶ 41, 42.

This could plausibly state a common purpose or scheme between Deputy Sowards and Mr. Meddings to falsely accuse Plaintiff of obstruction of justice and deny him his constitutional rights. However, Plaintiff's Complaint alleges no facts to show that Defendant WCC or Defendant Thompson were involved in this supposed conspiracy beyond stating that defendants "have a custom and/or practice," or were deliberately indifferent. Compl. ¶ 72. Plaintiff's facts suggest nothing to support a claim that these defendants joined a conspiracy. Further, because respondeat superior does not apply to § 1983 claims, Plaintiff would need to allege the WCC or Defendant Thompson's direct and personal involvement in the conspiracy, which he has failed to do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, as to Defendants Thompson and the WCC, the Motion must be granted, but as to Defendant Sowards, it must be denied.

D. Counts IV, V, VII, and IX: Abuse of Process; Malicious Prosecution; Defamation; Intentional Infliction of Emotional Distress

*i. Defendant WCC*

Defendants assert that the WCC is immune from liability pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act"). *See* W. Va. Code Ann. § 29-12A-1, *et seq*. Plaintiff asserts that qualified immunity does not extend to acts or omissions of a public official that were fraudulent, malicious, or oppressive. *See W. Va. Div. of Nat. Res. v. Dawson*, 832 S.E.2d 102, 116-17 (W. Va. 2019). This response is a non sequitur, given that it ignores that the WCC is an entity subject to the Act. *See* W. Va. Code Ann. § 29-12A-3. Under

the Act, political subdivisions are not liable for intentional actions. *See* W. Va. Code Ann. § 29-12A-4(b)(1); *Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007) ("[C]laims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code, 29–12A–4(b)(1). Only claims of negligence specified in W. Va. Code, 29–12A–4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code, 29–12A–4(b)(1)."). Wayne County Commission is a "political subdivision" listed in the Act. W. Va. Code Ann. § 29-12A-3. Each tort named in these counts is, by definition, malicious or intentional.[2] Accordingly, all of Plaintiff's state law claims against the WCC must be dismissed.[3]

### ii. Defendant Sowards

#### a. Abuse of Process

"Generally, abuse of process consists of the *willful or malicious* misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen,* 352 S.E.2d 22, 28 (W. Va. 1985) (emphasis added) (citations omitted). Defendants allege that because Plaintiff did not suggest that process was issued without a finding of probable cause or obtained through fraud, the claim fails as a matter of law. Defs.' Mem. 17. It is alleged, however, that Deputy Sowards made multiple misstatements of Plaintiff's remarks in criminal complaints and altered his words to obtain a search warrant against someone else. Compl. ¶¶ 36-40. This would, if true, would be an action initiated by Defendant Sowards that constitutes intentional misuse of the legal process.

However, the key distinguishing feature of an action for abuse of process is that it "lies or the improper use of a regularly issued process, not for maliciously causing process to issue, or for

---

[2] See the discussion below addressing the elements of each claim individually.
[3] To the extent that Plaintiff contends that any of these claims lie under federal law, the Court has not addressed this issue because it has not been briefed, and both parties have referred to the claims as state law claims. *See* Defs.' Mem. 16; Pl.'s Resp. at 16.

an unlawful detention of the person." *Id*. (quoting *Glidewell v. Murray-Lacy and Co.,* 98 S.E. 665, 668 (1919)). Because the "distinctive nature of an action for abuse of process ... is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue," *Harden*, 585 S.E.2d at 372 (emphasis added) (quoting *Preiser*, 352 S.E.2d at 28), "the mere filing of a complaint does not give rise to a claim for abuse of process." *Deel v. W. Virginia EMS Technical Support Network, Inc.*, No. CIV.A.2:06-1064, 2009 WL 2366524, at *3 (S.D. W. Va. July 24, 2009) (Copenhaver, J.) (internal quotation marks and citations omitted) (quoting *S. States Coop. Inc. v. I.S.P. Co.*, 198 F.Supp.2d 807, 816 (N.D. W. Va. 2002)). This is so regardless of the "bad intentions" of the defendant. *Id.* (quoting *Presier*, 352 S.E.2d at 28 n. 8). There are no contentions in the Complaint that go beyond the allegations of making misstatements causing criminal process to issue and fails to state a claim.

    b. Malicious Prosecution

In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it *was malicious*. Syl. Pt. 1, *Radochio v. Katzen,* 114 S.E. 746 (W. Va. 1922) (emphasis added). Defendants contend that Plaintiff has not established the second or third elements because a magistrate judge issued a warrant. *See* Defs.' Mem. at 17. However, "under West Virginia law regarding malicious prosecution, '[p]robable cause ... is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty.'" *Weigle v. Pifer*, 139 F. Supp.3d 760, 783 (S.D. W. Va. 2015) (quoting Syl. Part 3, *Morton v. Chesapeake and Ohio Ry. Co.*, 399 S.E.2d 464 (W. Va. 1990).

Instead, the element of probable cause refers to what a defendant reasonably believed, rather than whether the court or magistrate believed that probable cause existed. See *id*. ("[T]he question of the existence of probable cause depends on the defendant's honest belief of guilt on reasonable grounds."). Further, "malice can be inferred by a lack of probable cause." *Id*. Here, Plaintiff's allegations, when taken as a whole, suggest that Deputy Sowards could not have reasonably believed that there was probable cause to pursue an obstruction of justice charge and did so anyways. Compl. ¶¶ 36-43, 47. This sufficiently states a claim.

### c. IIED

To state a claim for intentional infliction of emotional distress, West Virginia requires plaintiffs to prevail on four elements:

> it must be shown (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with *the intent to inflict emotional distress* or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe the no reasonable person could be expected to endure it.

*Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020) (emphasis added).

Defendants contend that there is no allegation of outrageous conduct because the "only conduct complained of is that Plaintiff was arrested following a criminal investigation where two witnesses accused her [sic] of theft and where she [sic] alleged that the investigation was negligent." Defs.' Mem. 20. The evidence "demonstrates nothing more than the fact that a lawful investigation of a crime was conducted which resulted in Plaintiff's arrest." *Id*. Plaintiff responded noting the specific allegations as to Mr. Alexander, who did not move to dismiss in this Motion. Pl.'s Resp. 20. However, taken in the light most favorable to the Plaintiff, the Complaint alleges that Deputy Sowards should have known that Plaintiff was innocent of a crime but knowingly

misrepresented his statements to pursue charges against his coworkers and to charge him with obstruction. Compl. ¶¶ 36-40, 42, 43, 47. Given the foregoing, the Court finds that a question of fact remains as to whether Defendant's actions were sufficiently outrageous to support a claim of intentional infliction of emotional distress.

### d. Defamation

In West Virginia, a claim for defamation requires a plaintiff to plead and prove the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiffs; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley News*, 320 S.E.2d 70, 77 (W. Va. 1983). A communication or statement is "defamatory" "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (Am. L. Inst. 1977); *Crump*, 320 S.E.2d at 77. Here, Plaintiff alleges that the information in the newspaper article (and criminal investigation) were false. Compl. ¶ 48. Taken in the light most favorably to Plaintiff, the allegations suggest that Deputy Sowards knew the basis for the criminal charges were false and still informed the newspaper of their existence. This is sufficient to state a claim for defamation, because falsely charging a person with the commission of any crime is per se defamation in West Virginia. *See Milan v. Long*, 88 S.E. 618, 619 (W. Va. 1916).

### iii. Defendant Thompson

Defendants' Motion to Dismiss simply alleges that the Complaint is "void of any allegation of conduct or misconduct on the part of Sheriff Richard Thompson" and that Defendant Thompson is not individually liable because the Sherriff's Department is an entity that is not capable of being sued in its official capacity. Defs.' Mem. 11-12. Of course this ignores that Plaintiff seeks to hold

Sheriff Thompson liable in an individual capacity. Plaintiff's response addresses Sheriff Thompson's potential supervisory liability for Defendant Sowards. Pl's. Response 12-13. Defendants Reply addresses the potential for supervisory liability under 42 U.S.C. § 1983. Defs.' Reply 8-9, ECF No. 30. Given that Defendant has therefore not moved to dismiss the Sheriff on immunity grounds and made no argument as to Sheriff Thompson's individual liability for state law claims in its Motion, the Court will not consider this ground and will allow the claims to remain against Defendant Thompson. However, for the same reasons Plaintiff has failed to state a claim against Defendant Sowards for abuse of process, that count fails against Defendant Thompson.

E. Count VIII: Respondeat Superior/Negligent Hiring, Supervision and Retention (Wayne County Commission and Thompson)

Defendants do not specifically address these counts in their Motion and so it is unnecessary for the Court to consider them at this time.

IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss. The Court **DENIES** the Motion with respect to Count I. The Court **GRANTS** the Motion with respect to Count II. As to Count III, the Court **GRANTS** the motion as to the WCC and Thompson but **DENIES** as to Sowards. As to Count IV, the Court **GRANTS** the motion. As to Counts V, VII, and IX, the Court **GRANTS** the motion as to the WCC, but **DENIES** as to Defendants Thompson and Sowards. As to Count VIII, the Court **DENIES** the Motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 19, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE