## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

DAVID EUGENE SAMMONS,

        Plaintiff,

v.                              CIVIL ACTION NO.   3:21-0081

DEPUTY HARRY SOWARDS, individually,
HOWARD MEDDINGS, individually, and
WAYNE COUNTY BOARD OF EDUCATION,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Deputy Harry Sowards' Motion for Summary Judgment[1] (ECF No. 77), Defendant Howard Meddings' Motion for Summary Judgment (ECF No. 75) and the Wayne County Board of Education's ("WCBOE") Motion for Summary Judgment[2] (ECF No. 74). For the reasons herein the Court **GRANTS** the Motions.

## I. FACTUAL BACKGROUND

Plaintiff David Eugene Sammons was an employee of the WCBOE for forty years, until he retired in 2019. Pl.'s First Depo. at 9-12, ECF No. 74-11.[3] As part of his final position, Director of Transportation, he supervised other employees working at the bus parts garage. *Id*. at 13-19.

---

[1] The Court notes that, at the time of the original filing of the Motion, the Wayne County Commission and Wayne County Sherriff Richard Thompson were also named as defendants and represented by the same counsel. They have since been dismissed by stipulation. ECF No. 81. As such, the Court will only address Deputy Sowards' arguments and refer to his briefing in the singular.

[2] Similarly, Todd Alexander, the superintendent of the WCBOE, was also a named defendant represented by the same counsel. He has since been dismissed. ECF No. 86. As such, the Court will only address the WCBOE's arguments and refer to its briefing in the singular.

[3] Plaintiff has been deposed twice, first in the Reeves case and second in his own case. Accordingly, the Court will refer to the depositions as the First Deposition (ECF No. 74-11) and the Second Deposition (ECF No. 77-2).

These employees included Howard Meddings, the inventory supervisor, and James Lee Reeves, the chief mechanic, among others. *Id*. During his tenure as Director, Plaintiff had at least one verbal confrontation with Meddings which he reported to Todd Alexander, the WCBOE superintendent. *See* Pl.'s Emails, ECF No. 79-5; Meddings Depo. at 330-340, ECF No. 74-4. Meddings also had issues with Reeves and repeatedly told others, allegedly including Plaintiff, that Reeves was involved in a tire scam. Meddings Depo. at 74-92; Pl.'s First Depo. at 85-88 (denying the same).

About a month after Plaintiff retired, on October 16, 2019, an alleged break-in occurred at the WCBOE parts room, which Meddings reported to Alexander. Pl.'s First Depo. at 97; Alexander Depo. at 46, ECF No. 74-6. Alexander then contacted Deputy Sowards to investigate the incident. Alexander Depo. at 225. As a result, all named defendants participated in the investigation of the alleged break-in over the next few months. During the investigation, Deputy Sowards began to suspect Reeves and his wife, Katrina Reeves, of having illegally obtained WCBOE property. Sowards Depo. at 91-99, ECF No. 74-7. Deputy Sowards visited the Reeveses' property on the same day as the break-in and photographed items found there, after Mr. Reeves told him that there was WCBOE property at his home, which he stated was obtained legally. J. Reeves Depo. at 181-182, ECF No.74-5; Sowards Depo. at 222-223. Deputy Sowards continued his investigation, the propriety of which has been disputed at length and is the subject of another lawsuit before this Court.

During the investigation, on October 24, 2019, Deputy Sowards, Todd Alexander, and Plaintiff met for a discussion. Deputy Sowards showed Plaintiff some of the photographs taken at the Reeveses' home on October 16, 2019. Pl.'s First Depo. at 207-208. The parties disagree about much of the conversation. Plaintiff testified that when asked if the items in the photographs at the Reeveses' property "could have been on the buses" sent for auction and thus legally obtained,

Plaintiff informed Deputy Sowards that typically only obsolete items were left on the buses but noted that it was possible for everything he was shown to have been on the buses. *Id*. at 121-124, 209-213; *see also* Pl.'s Second Depo. at 126-27, ECF No. 77-2. Sowards asked Plaintiff if Meddings had reported Mr. Reeves' suspected thefts. Criminal Complaint at 7, ECF No. 77-1; Pl.'s Second Depo. at 231. In response, Plaintiff testified that he told Deputy Sowards that he did not think "anybody was ever stealing… and [he] never suspected anybody stealing." Pl.'s First Depo. at 123. Plaintiff took notes after the meeting, which indicated that he had told Deputy Sowards that all of the items shown to him could have been obtained from buses sold at auction. *See* Pl.'s Notes, ECF No. 79-11. Deputy Sowards continued his investigation, which included executing a search warrant at the Reeveses' property. Sowards Depo. at 122; 266-68; J. Reeves Depo. at 202-08.

On February 6, 2020, Deputy Sowards pursued a Criminal Complaint against Mr. Reeves and his wife in the Magistrate Court of Wayne County, West Virginia. *See* J. Reeves Criminal Complaint, ECF No. 74-8; K. Reeves Criminal Complaint, ECF No. 85-8. In his affidavits attached to both, he noted his recollection of the conversation he had with Plaintiff as part of his investigation, writing:

> On 10/24/2019 Mr. Alexander and I spoke with David Eugene Sammons, retired Transportation Director. Mr. Sammons advised that when buses were approved for auction, he took pictures of the buses and uploaded them to auction websites. Mr. Sammons stated that sometimes he would place a few obsolete, hard to get rid of, parts on the buses when they were auctioned off. He stated that aerosols, Brakleen, and things of value would have never been left on the buses to be auctioned off. We showed him the photograph and he advised that some of the items in that picture, as previously stated, would never been on a bus for auction. He also advised that buses would not have been used for chemicals to be stored on. When I asked Mr. Sammons if he was ever notified of Mr. Reeves was stealing he told me no. I then asked him if he removed "Lee Reeves" from the lower lot and brought him to the upper lot was because of suspicion of stealing he told me no. He advised that he never suspected any of his employees to be stealing and that he was never notified of anything of such nature.

K. Reeves Criminal Complaint at 7-8; J. Reeves Criminal Complaint at 7-8. The Reeveses were eventually arrested pursuant to warrants and charged with crimes. *See* J. Reeves Warrant, ECF No. 74-13; K. Reeves Warrant, ECF No. 74-14.

On the same day, Deputy Sowards filed a Criminal Complaint against Mr. Sammons for Obstruction of Justice in violation of W. Va. Code § 61-5-17. *See* Criminal Complaint, ECF No. 77-1. In it, he included verbatim the same paragraph about the October 24th meeting as in the complaints against the Reeveses. *Id*. at 6-7. However, he added another paragraph, laying out the basis for charging Plaintiff with obstruction; he had received statements from other employees that they had reported thefts to Plaintiff and suspected Reeves. *Id*. at 9.

Plaintiff learned of the criminal complaint from his son who had seen it in the Leviza Laser Newspaper. Pl.'s Second Depo. at 166. He phoned the Sherriff's Office; and was told to come in and see the magistrate. *Id.* at 166-167. He appeared before a magistrate judge on February 7, 2020 and was informed of the charges against him. *Id*. at 168-169. On June 2, 2020, the State of West Virginia moved to dismiss the matter because the "Defendant's statements do not establish the statutory requirements for violation of [§] 61-5-17," which the magistrate granted. *See* Sammons Dismissal, ECF No. 74-16.

Plaintiff filed this suit on February 1, 2021, alleging violation of his civil rights and various state law claims.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

A. Federal Claims

Plaintiff has alleged a § 1983 claim against Deputy Sowards and a conspiracy to violate his civil rights between Deputy Sowards and Meddings. "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A conspiracy claim under Section 1983 requires that plaintiffs meet the "weighty burden" of showing that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).

1. Qualified Immunity Standard

The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the court must conduct a two-step analysis. *Id.* at 232. First, the court must determine whether the record supports a violation of a constitutional right. *Id.* Second, the court must determine whether the right was "clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks and citation omitted). To be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). If both factors result in the affirmative, qualified immunity does not apply. *Pearson*, 555 U.S. at 232. The analysis does not need to be applied in sequence depending on the circumstances of each individual case. *Id.* at 236.

a. Violation of a Constitutional Right - Fourth Amendment Malicious Prosecution

The Fourth Amendment provides that a person's right "to be secure in their persons ... against unreasonable searches and seizures ... shall not be violated ... but upon probable cause." U.S. Const. amend. IV. A § 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)); *see also Manuel v. City of Joliet,* 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). To prove such a claim,

a plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) (quoting *Evans*, 703 F.3d at 647).

Deputy Sowards does not contest the first or third elements of the malicious prosecution claim; it is undisputed that Deputy Sowards sought a criminal complaint against Plaintiff (Criminal Complaint, ECF No. 77-1) and that the state prosecutor later moved to dismiss these criminal charges, which was granted by a state magistrate. (Motion to Dismiss, ECF No. 74-6). Def.'s Reply at 3, ECF No. 88. The only disputed element is whether Plaintiff was seized without probable cause and has therefore proven a constitutional violation. Plaintiff turned himself in to police pursuant to a warrant issued by a neutral magistrate who made a finding of probable cause. Pl.'s Second Depo. at 167-69. Deputy Sowards argues that there is no evidence that he misrepresented facts and fraudulently obtained the warrant; thus, the magistrate's finding of probable cause was valid, and no constitutional deprivation occurred. Def.'s Mem. at 7, ECF No. 78. Plaintiff argues that Deputy Sowards' knowing or reckless misrepresentation of facts in the warrant application invalidates any finding of probable cause. Pl.'s Resp. at 10-14, ECF No. 85.

"A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a reckless disregard for the truth made material false statements in the warrant application or omitted from that application material facts with the intent to make, or with reckless disregard of whether they thereby made, the application misleading." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (internal citations and quotations omitted). "Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his

statements or had obvious reasons to doubt the accuracy of the information he reported." *Miller v. Prince George's Cnty, MD,* 475 F.3d 621, 627 (4th Cir. 2007). (alteration in original) (internal citation and quotations omitted). "With respect to omissions, reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause." *Id.* (internal citations and quotations omitted). Negligence or innocent mistake by a police officer will not provide a basis for a constitutional violation. *See id.* at 627-28. Plaintiff bears the burden of proof. *Id.* at 627.

Here, the criminal complaint affidavit is a long recitation of an investigation primarily pertaining to Mr. Reeves; it goes well past the October 24th meeting with Plaintiff. The first six pages detail the investigation of the Reeveses. Regarding Plaintiff, Deputy Sowards writes the following:

> On 10/24/2019 Mr. Alexander and I spoke with David Eugene Sammons, retired Transportation Director. Mr. Sammons advised that when buses were approved for auction, he took pictures of the buses and uploaded them to auction websites. Mr. Sammons stated that sometimes he would place a few obsolete, hard to get rid of, parts on the buses when they were auctioned off. He stated that aerosols, Brakleen, and things of value would have never been left on the buses to be auctioned off. We showed him the photograph and he advised that some of the items in that picture, as previously stated, would never been on a bus for auction. He also advised that buses would not have been used for chemicals to be stored on. When I asked Mr. Sammons if he was ever notified of Mr. Reeves was stealing he told me no. I then asked him if he removed "Lee Reeves" from the lower lot and brought him to the upper lot was because of suspicion of stealing he told me no. He advised that he never suspected any of his employees to be stealing and that he was never notified of anything of such nature.

A few pages later, after Deputy Sowards recounted more of the Reeves investigation, he writes:

> David Eugene Sammons is the retired Director of Transportation of Wayne County Schools. Mr. Sammons met with Todd Alexander, Superintendent of Wayne County Schools, and I on 10/24/2019. Mr. Sammons stated to me that he did not suspect James Reeves of stealing. During the course of this investigation I spoke with Howard Meddings. Mr. Meddings advised that he told David Sammons that he suspected James Reeves of stealing from the bus garage. Mr. Meddings stated that Mr. Sammons told him that his dad worked in a cookie company and you can't stop someone from taking a cookie from every now and then. Shortly after Mr. Sammons moved Mr. Reeves from tire and lube (lower

lot) to upper lot because he had suspicion of Mr. Reeves stealing and selling tires to S&S tires. Richard Brumfield also stated that he heard Howard Meddings tell Mr. Sammons that James Reeves was stealing from the bus garage and that he needed to put a stop to it. I am charging David Eugene Sammons with one count of Obstructing an Officer.

Criminal Compl. at 6, 9.

The only statements that Plaintiff specifically disputes are whether he stated that the items shown to him in the pictures could have been found on an auctioned bus and thus properly obtained.[4] Plaintiff, in his deposition, testified that he told Deputy Sowards that all of the items could have been on the buses to be auctioned. *See* Compl. ¶¶ 36-38, Pl.'s Depo. at 126-12, ECF No. 77-2. However, the statements about items being properly on the buses were primarily used to support finding probable cause against Mr. and Mrs. Reeves; they appear verbatim in the criminal complaints against them. *See* J. Reeves Criminal Complaint at 7-8; K. Reeves Criminal Complaint at 7-8.

Instead, the final paragraph, which lays out the basis for the obstruction charge, contains neither facts which Plaintiff has shown are false or made with reckless disregard nor omissions. Plaintiff obviously agrees that he spoke with Deputy Sowards about the materials on the buses because this event forms the basis of his malicious prosecution claim. Pl.'s Second Depo. at 121-122. Plaintiff also agrees that he told Deputy Sowards that he did not suspect Mr. Reeves of stealing. Pl.'s First Depo. at 123. Deputy Sowards also writes in the affidavit that Meddings and Brumfield, a bus mechanic, told him that they had reported Mr. Reeves to Plaintiff and that Mr. Reeves was moved because of suspicion of theft. Plaintiff contends that Meddings' statements and Brumfield's statements were false, but he is unable to prove that Deputy Sowards knew they were

---

[4] In his Response brief, Plaintiff primarily takes issue with the statements regarding what items were placed on the buses and the use of those statements to pursue an investigation against the Reeveses. *See* Pl.'s Resp. at 3-5. Further, these were the statements identified as at issue in his Complaint. *See* Compl. ¶¶ 36-38.

false but intentionally included them to support a finding of probable cause.[5] Further, the record evidence supports Deputy Sowards' account of what Meddings and Brumfield told him.

For example, Brumfield stated that Meddings told him that Mr. Reeves was involved in a tire scheme. Brumfield Depo. at 23, ECF No. 74-2. Brumfield also said he had personally reported items stolen to Plaintiff. *Id*. at 72-73. He was interviewed by Deputy Sowards and provided a written statement, though he did not recall its exact contents. *Id*. at 47. Meddings also testified that he told Deputy Sowards he had reported Mr. Reeves' behavior to Plaintiff. Meddings Depo. at 104, 252 ECF No. 74-4. He further testified about Plaintiff's cookie statement. *Id*. at 46-48. Deputy Sowards was also faced with other evidence to support a belief that Mr. Reeves had stolen and that Plaintiff was informed of suspicions against Mr. Reeves. Another employee whom Deputy Sowards interviewed stated that he had heard Meddings tell Plaintiff that Mr. Reeves was stealing, and that Mr. Reeves may have been transferred because of that, supporting Deputy Sowards' contention that Plaintiff moved Mr. Reeves for that reason. *See* Thompson Depo. at 13-17.

It was reasonable for Deputy Sowards to rely on the reports of other witnesses, even if they turned out to be unreliable, in his decision to pursue a charge against Plaintiff. *See Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1990) ("[A] police officer conducting an investigation is not in a position to make the type of credibility determination that occurs in the repose of a courtroom."). To the extent that Plaintiff contends Deputy Sowards had knowledge about certain facts in the Reeves case, this knowledge is not necessarily relevant to what he knew about Plaintiff and his decision to charge him. Here, Deputy Sowards received a statement from Plaintiff about Mr. Reeves he believed was contradicted by other employees' statements. Deputy Sowards was also faced with other evidence to support a belief that Mr. Reeves had stolen, and that Plaintiff knew

---

[5] Nor does he, at any point, cite any record evidence to prove that these statements were false. *See e.g.,* Pl.'s Resp.

Mr. Reeves was suspected of theft; other employees he had interviewed had told him as much and by the time he interviewed Plaintiff, a significant amount of WCBOE property had been discovered at the Reeveses' property. *See* J. Reeves Depo. at 185-189, ECF No. 74-5; Sowards Depo. at 266-267, ECF No.74-7.

Only the (undisputed) statement that Plaintiff did not suspect Mr. Reeves of stealing and the statements from other employees that implicitly contradicted this belief formed the basis of the charge. While it may be a weak basis for an obstruction charge, Plaintiff has done nothing to show that the statements in the affidavit are knowingly false or that Deputy Sowards recklessly omitted other evidence that supported a finding that Plaintiff was not guilty of obstruction. Nor can he come close to making the "substantial preliminary showing" required. *See United States. v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

Further, to the extent that Plaintiff contends Deputy Sowards "never asked Mr. Sammons if he witnessed or saw Mr. Reeves stealing," Pl.'s Resp. at 5, "Reasonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *Wadkins v. Arnold,* 214 F.3d 535, 541 (4th Cir. 2000) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991)). Moreover, the affidavit explicitly stated that other employees (namely Meddings and Brumfield) only suspected Mr. Reeves of theft, not that they or Plaintiff witnessed thefts directly. Deputy Sowards' statements about Plaintiff were not "deliberately or recklessly made."

Because Plaintiff cannot show a genuine issue of material fact on the issue of whether Deputy Sowards misled or misinformed the magistrate, the magistrate's finding of probable cause cuts off his liability. *See Evans*, 703 F.3d at 648 (citing *Snider v. Lee*, 584 F.3d 193, 206 (4th Cir.2009) (Stamp, J., concurring) ("A law enforcement officer who presents all relevant probable

cause evidence to a prosecutor ... is insulated from a malicious prosecution claim where such intermediary makes an independent decision ... unless the officer [1] concealed or misrepresented facts or [2] brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne."); *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D.W. Va. 1995) ("[I]t is equally well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.") (internal citation omitted).

Finally, Plaintiff argues that the Reeves case is relevant and determinative of the issues in this case. But Plaintiff has merely tried to indiscriminately adopt unspecified arguments and evidence to use here, which the Court cannot do. Instead, we are dealing with two different cases with material differences of fact. Accordingly, summary judgment is appropriate, and the Motion on this count is **GRANTED**.

### 2. Civil Conspiracy Claim

To state a claim for civil conspiracy under Section 1983, plaintiffs have the "weighty burden" of showing that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Barrett*, 975 F.3d at 434 (quoting *Hinkle* 81 F.3d at 421). Here, of course, the Court has found that no Fourth Amendment right was violated in its analysis of the § 1983 claim.

Plaintiff's response indicates that they have adequately alleged "very specific Constitutional Rights including those contained within the First, Fourth, Fifth, and Sixth Amendments." Pl.'s Resp. at 10, ECF No. 85. But his Complaint only referenced deprivations

under the First, Fourth, and Fourteenth Amendment "rights to be secure in his person, free from unreasonable detention, search, and seizure, and to bodily security and personal privacy." Compl. at ¶¶ 54, 76, ECF No. 1. No discernible First Amendment right has been implicated, nor did Plaintiff ever advance either this theory or a Fourteenth Amendment violation theory. Further, "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of the legal process" and malicious prosecution, not the more general due process clause. *See Manuel* 137 S. Ct. at 917-21. Accordingly, the finding that no constitutional right was violated in Plaintiff's Fourth Amendment claim is fatal to the conspiracy claim for the same. The court will award summary judgment to both Defendants on this count; the Motion is **GRANTED**.

a. Collateral Estoppel

As an additional matter, collateral estoppel is inapplicable to the issues here. In response to Meddings' Motion for Summary Judgment, Plaintiff repeatedly asserts that collateral estoppel precludes the Court from finding Meddings is entitled to qualified immunity because the Court did not do so in *Reeves*. Pl.'s Resp. at 11-14, ECF No. 84. As the Fourth Circuit has explained:

> A party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Sedlack v. Braswell Servs. Grp., Inc.,* 134 F.3d 219, 224 (4th Cir.1998)).

Plaintiff has not even attempted to lay out how the issues he seeks to preclude satisfy these five elements – nor can he. The Court first notes that the circumstances giving rise to Plaintiff's claims are not identical – in fact there are significant differences of legal consequence between the issues here and in the Reeves case. However, Plaintiff also does not satisfy the fourth element here.

This Court denied Meddings' claim of qualified immunity in an Order denying summary judgment. *See* Mem. Op. and Order, *Reeves v. Wayne County Board et al*, No. 3:20-CV-00423, (S.D.W. Va. June 6, 2020), ECF No. 295. "An order granting a motion for summary judgment is final; an order denying such a motion is not." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 506 (2015). The Court, in *Reeves*, did not grant summary judgment as to any count against Meddings. Therefore, collateral estoppel is not applicable to the issue of qualified immunity.

B. State Claims

The Court will retain jurisdiction over the state law claims in this case despite dismissing the federal law claims because it will be more convenient and fairer to the parties and the case does not involve issues of novel or complex state law. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.")

1. Malicious Prosecution

Deputy Sowards claims he is immune from the malicious prosecution state law claim. Def.'s Mem. at 8-9. Under West Virginia law, a plaintiff bringing a malicious prosecution claim must show "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Syl. pt. 1, *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 368 (2019) (quoting Syl. pt. 1, *Radochio v. Katzen*, 114 S.E. 746 (W. Va.1922)). As discussed in the federal claim, Plaintiff has been unable to show that the prosecution occurred without probable cause and so cannot meet the elements of a state malicious prosecution claim. Accordingly, summary judgment is appropriate, and the Court will **GRANT** the motion on this count.

### 2. Defamation

#### i. Deputy Sowards

Deputy Sowards claims he is entitled to summary judgment on this claim because any statements given fall within the "matter of public interest" defense to invasion of privacy claims. Def.'s Memo at 9-10 (citing *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 84 (W. Va. 1983)).[6] Plaintiff responds that "[i]n light of the recent Memorandum Opinion Orders in the Reeves' matter, Plaintiff acknowledges that the act charging Plaintiff as well [sic] the press release in itself is not enough to establish the elements of defamation." Pl.'s Resp. at 18.[7] Given that Plaintiff has apparently abandoned this claim and has not provided any record evidence to establish the elements of a defamation claim, the Court will **GRANT** summary judgment as to Deputy Sowards on this count. *See Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D.W. Va. July 25, 2018) *aff'd*, 780 F. App'x 32 (4th Cir. 2019) ("The failure to respond to arguments raised in a motion ... can indicate that the non-moving party concedes the point or abandons the claim.")

#### ii. Meddings

Defendant Meddings asserts that he is entitled to the defense of qualified privilege because he acted in good faith when he provided information to Deputy Sowards and he had an interest and duty to provide the information, even if it was subsequently determined to be false. Def.'s Mem. at 12, ECF No. 76. Plaintiff responds that there is ample record evidence to support that

---

[6] The Court notes that the matters of legitimate public interest defense, discussed in *Crump*, is a defense to invasion of privacy claims. *See Crump*, 320 S.E.2d at 84. As noted by the *Crump* Court itself, "[a]lthough there are obviously a number of similarities between the right to privacy and the law of defamation, particularly when a "false light" invasion of privacy is involved, there are also important differences which reflect the nature of the interests protected by each." *Id*. at 83. As such, this defense is inapplicable to a claim of defamation, and there has never been an invasion of privacy claim.

[7] For clarity's sake, the defamation claims in *Reeves* survived where those plaintiffs were able to produce testimony regarding at least one specific statement made by Deputy Sowards. No such statements have been identified here.

Meddings did not act in good faith and points to Meddings' specific claims that Plaintiff often remarked he could not stop other employees from getting a "cookie" during his tenure. Pl.'s Resp. at 14, ECF No. 84.

Qualified privilege exists when a person "publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication to those who have a legitimate interest in the subject matter." Syl. pt. 10, *Zsigray v. Langman*, 842 S.E.2d 716 (W. Va. 2020) (quoting Syl. pt. 4, *Dzinglski v. Weirton Steel Corp*. 445 S.E.2d 219 (W. Va. 1994)). "[H]owever, a bad motive will defeat a qualified privilege defense." *Id.*

Meddings offers no record evidence in support of his assertion of good faith on this count in his briefing, but in his deposition, he testified that he acted in good faith regarding all his statements. *See* Meddings Depo. at 66-74, 99. In that same deposition, he acknowledged that he had no specific proof of Mr. Reeves' thefts. *Id*. at 66, 98-99. But here, Plaintiff has not produced any evidence whatsoever to call into question Meddings assertion of good faith, beyond blanketly stating that "more than ample evidence supports a reasonable inference that Meddings sought to damage Plaintiff..." Pl.'s Resp. at 14. In the *Reeve*s case, the Court found a triable issue on the defamation claim where other employees testified to Meddings' weekly statements about Mr. Reeves' theft, and the "total circumstances of [Medding's] alleged animus and past conduct towards the [Reeveses] could lead to a finding that precludes good faith." *See* Mem. Op. and Order at 8, *Reeves v. Wayne County Board et al*, No. 3:20-CV-00423, (S.D.W. Va. June 6, 2020), ECF No. 295.

The same evidence does not exist here. Instead, Plaintiff has in fact admitted that, except for a single incident, he and Meddings had no issues. Pl.'s Second Depo. at 174-176. Nor is there evidence that Meddings made statements regarding Plaintiff to anyone but Deputy Sowards. There

is no other evidence to suggest that Mr. Meddings made the statement in bad faith, and he made it in the context of a police investigation that this Court has concluded was lawful. Therefore, he is protected by qualified privilege. *See Belcher v. Wal-Mart Stores, Inc*., 568 S.E.2d 19, 27 (W. Va. 2002) (finding that statements made by store employees to a police officer about plaintiff's receipt being fake were privileged where employees recognized a legitimate need to look into a suspicious receipt in the context of an ongoing investigation). Therefore, the Motion must be **GRANTED** as to Defendant Meddings on this count.

### 3. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Lab'ys, Inc*., 504 S.E.2d 419 (W. Va. 1998). Whether conduct may reasonably be considered outrageous is a legal question for the trial court to determine. *See id*., Syl. pt. 4.

### i. Deputy Sowards

Defendant argues that the evidence demonstrates nothing more than a lawful investigation of a crime resulting in Plaintiff's arrest,[8] and therefore cannot be outrageous as a matter of law. Def.'s Mem. at 11-12. Plaintiff responds that Deputy Sowards abused his power and showed disregard for Plaintiff's constitutional rights by knowingly lacking probable cause and pursuing a

---

[8] Again, Plaintiff was not arrested, but turned himself in pursuant to a warrant.

criminal charge, which is outrageous conduct. Pl.'s Resp. at 17-18. Of course, this Court has now found that a constitutional violation did not occur. The proper investigation of a crime, even if mistaken, is not outrageous conduct as a matter of law. *See Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 390–92 (1994) (a finding for defendant on a malicious prosecution claim negates a claim for outrageous conduct inasmuch as the showings necessary to support "a malicious prosecution case are less severe than an action for outrageous conduct"). The Court will therefore **GRANT** summary judgment on this count.

ii. Meddings

Defendant Meddings notes that there is no evidence that he acted outside of the scope of his employment or in bad faith towards Plaintiff. Def.'s Mem. at 13-14. Plaintiff responds that the record evidence on Meddings' insubordination and on the conspiracy charge is sufficient to establish a motive to harm Plaintiff. Pl.'s Resp. at 14-15. There is, of course, record evidence of a dispute in which Meddings allegedly became angry with Plaintiff, called him an ass and then later grabbed his crotch and said, "Is he [Plaintiff] afraid of us because we have balls?" *See* Pl.'s Second Depo. at 45-58, 90, 357; Pl.'s Emails; Meddings Depo. at 154-155. However, this singular dispute and the accompanying behavior, while rude, is insufficient to rise to the level of outrageous conduct required as a matter of law. *See Tanner v. Rite Aid of W. Virginia, Inc.*, 461 S.E.2d 149, (155) ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (quoting Restatement (Second) of Torts § 46(1) (1965)); *see also Napier v. Stratto*, 513 S.E.2d 463, 466 (W. Va. 1998) ("Annoying or mean-spirited conduct is not sufficient to support a claim.") (internal citation omitted). Therefore, the Court **GRANTS** the Motion as to Meddings on this count.

4. Negligent Hiring, Retention, and Supervision

The negligent hiring, retention, and supervision claims lie only against the WCBOE. However, this Court has already found that there is no actionable conduct of a WCBOE employee upon which Plaintiff could proceed in this case. Where there has been no proven tortious conduct, Plaintiff cannot make out his claim for the specified causes of action in negligence against an employer. *See Radford v. Hammons*, No. 2:14-24854, 2015 WL 738062, at *7 (S.D.W. Va. Feb. 20, 2015) ("If the employer later commits a tort, the employer may be directly liable."); *Rhodes v. King*, 2020 WL 4607323, at *5 (S.D.W. Va. Aug. 11, 2020) ("Generally speaking, the torts of negligent retention and supervision follow that of general negligence claims: The analysis examines whether the employer was on notice of the employee's propensity, yet unreasonably failed to take action, and the employee's tortious conduct results in harm to a third party."); *State ex rel. Golden v. Kaufman*, 760 S.E.2d 883, 897 (W. Va. 2014) ("[The negligent supervision and training claims] are derivative of the alleged wrongful conduct committed by [the employee.] Having determined that [the employee] did not commit an actionable tort, [Plaintiff] does not have a valid cause of action against [the employee] and his claims against [the] employer, [] must also fail."). Alternatively, his claims fail for the following reasons.

i. Negligent Hiring

To state a claim for negligent hiring, "a plaintiff must establish that "the employer is negligent in the hiring [] of an employee and such negligence proximately causes the harm." *Brown v. Mason Cnty. Comm'n*, 2019 WL 6654124, at *7 (S.D.W. Va. Dec. 5, 2019) (quoting *Hager v. Robinson*, No. 2:03-0094, 2005 WL 8159176, at *10 (S.D.W. Va. Feb. 1, 2005). Under West Virginia law, courts inquire:

> When an employee was hired, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible

risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring an unfit person?

*McCormick v. W. Virginia. Dep't of Pub. Safety*, 503 S.E. 2d 502, 506 (W. Va. 1998) (per curiam) (quoting *State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997)).

Here, there has been absolutely no evidence as to the WCBOE's investigation into Meddings' background prior to hiring him in January 1988. Plaintiff conceded, in his deposition, that he had no information regarding whether the WCBOE had any information suggesting they should not have hired Meddings. Pl.'s Second Depo. at 227. In his response, Plaintiff appears to have abandoned the negligent hiring claim and did not offer any record support for this claim. *See Blankenship*, 2018 WL 3581092, at *9. As such, Plaintiff has conceded to Defendant's position, and the Motion as to this claim is **GRANTED.**

### ii. Negligent Retention

To hold an employer liable for negligent retention, the employer must have been able to foresee 'the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee.'" *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 776 (W. Va. 2021) (quoting *McCormick,* 503 S.E.2d at 506). "Thus, the relevant inquiry in a negligent retention analysis is, should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person? Liability for negligent retention may be imposed when an injury occurred because of an employer's retention of an unfit employee and such risk of injury was reasonably foreseeable to the employer." *Id.* (internal citation and quotations omitted). The *McCormick* Court further explained that the inquiry depends upon "the nature of the employee's job assignment, duties, and responsibilities." 503 S.E.2d at 507. "The duty with respect to hiring and retention increases 'as the risks to third persons associated with a particular job increase.'" *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010) (quoting *McCormick*, 503 S.E.2d at 507*)*.

Defendant argues that Plaintiff has only pointed out one workplace incident where he brought concerns to Alexander's attention, which is insufficient to constitute a foreseeable risk. Def.'s Mem. at 12-14, ECF No. 71. Further, Defendant argues that there has been no evidence that Meddings was unfit for the job. *Id*. at 14. Plaintiff responds, "Defendants knew full well that Defendant Meddings failed to maintain an accurate inventory of the parts room… because he refused to use the software program regularly to track parts." Pl.'s Resp. at 13, ECF No. 79. Additionally, Plaintiff "clearly notified Alexander that Meddings would lie to harm others and the record evidence supports that Meddings' behavior to harm others was very foreseeable to these Defendants." *Id*. Plaintiff argues that Alexander "improperly allowed Defendant Meddings' insubordinate behavior to continue, which ultimately resulted in the criminal charge against Mr. Sammons." *Id*. at 14.

The record shows that Plaintiff, Meddings' immediate supervisor, had personal knowledge of a single instance where he brought an issue concerning Meddings' behavior to Alexander's attention. Pl.'s Second Depo. at 174-176; Pl.'s Emails at 4. Specifically, in his email to Alexander, Plaintiff wrote "He [Meddings] will fabricate and misuse information in an attempt to destroy others, as his use of my questions about inventory was turned into accusations of him stealing." Pl.'s Emails at 4. His email warned exactly of the behavior that Plaintiff alleges took place here, a false accusation against him, though there is no record evidence regarding whether these incidents were further communicated from Alexander to other WCBOE members. Plaintiff stated that he was unaware of other employees bringing concerns about Meddings to Alexander's attention. Pl.'s Second Depo. at 177. But Mr. Reeves testified that he had brought up his own issues with Meddings to Alexander in the past, including a harassment charge where Meddings allegedly lied about Reeves' conduct. *See* J. Reeves Depo. at 46-50.

However, it is also relevant that Plaintiff consistently gave Meddings satisfactory performance ratings. *See* Pl.'s Second Depo. at 18, 21-22; Performance Reviews, ECF No. 74-18, 74-19. A single negative evaluation arose from unrelated circumstances, though it noted Meddings' failure to maintain an accurate inventory. *See* Performance Review, ECF No. 74-19. Further, Plaintiff admits that if he had an issue with Meddings' performance that he "felt needed to be addressed and was urgent," he would include a comment on Meddings' performance evaluation, which he never did. Pl.'s Second Depo. at 27. Plaintiff also never asked for Meddings to be terminated; in fact, he testified that he would not have terminated Meddings had he possessed the authority to do so. *Id*. at 227-28. Overall, then, the record evidence could establish a genuine issue of material fact as to Meddings unfitness and his employers' awareness of the same.

But even if Defendant was aware of Meddings' unfitness, it stretches the concept of foreseeability too far to decide that an employee's false accusations or failure to maintain an accurate inventory could lead to Plaintiff's arrest in these circumstances. Meddings was an inventory supervisor, handyman, and groundsman. Meddings Depo. at 11, 268. Even if Meddings' false report of missing inventory could lead to an investigation against a coworker like Mr. Reeves, it is unforeseeable that another retired employee, during such investigation, would allegedly lie and subject himself to liability. The accusation against Plaintiff was investigated and pursued after a police officer and neutral magistrate found probable cause to pursue a criminal complaint. Meddings did not have authority or status to independently launch an investigation or suggest whom to interview. No reasonably prudent person could anticipate that Meddings' failure to maintain a complete and accurate inventory and/or false accusation would result in Deputy Sowards' pressing and obstruction charge which was found to be supported by probable cause pursuant to the ordinary legal process.

### iii. Negligent Supervision

West Virginia law requires a "showing that the employer failed to properly supervise its employee and, as a result, the employee committed a negligent act which proximately caused the appellant's injury." *C.C.*, 859 S.E.2d at 774. Of course, here, Mr. Meddings' alleged behavior was intentional. *See* Mem. Op. and Order at 11-13, ECF No. 69. Therefore, there has been no "negligent act which proximately cause [the plaintiff's] injury." *C.C.* 859 S.E.2d at 774. Further, because Mr. Alexander is not the "employee being supervised" his conduct cannot be a basis for liability.[9] *See id.*

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Deputy Harry Sowards' Motion for Summary Judgment (ECF No. 77), Howard Meddings' Motion for Summary Judgment (ECF No. 75), and Wayne County Board of Education's Motion for Summary Judgment (ECF No. 74).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          March 18, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9] To the extent that Alexander, as an employee of the WCBOE's retention of Meddings could constitute the grounds for underlying negligence, in this instance, Alexander had no independent hiring or firing power, nor has that been asserted at any point. *See* Alexander Depo. at 58-59. Further, Plaintiff has developed no facts or even produced evidence of a theory that the WCBOE failed to supervise Alexander.